IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WUGNET PUBLICATIONS, INC. | : | |
| c/o JOEL DIAMOND | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 16-4044 |
| PEERLESS INDEMNITY INSURANCE | : | |
| COMPANY, a division of OHIO | : | |
| CASUALTY, a member of the Liberty | : | |
| Mutual Group | : | |

O'NEILL, J.                                                                                                                                                 June 27, 2017

## **MEMORANDUM**

In the present case, plaintiff Wugnet Publications, Inc. alleges both breach of contract and bad faith arising out of the denial of insurance coverage by defendant Peerless Indemnity Insurance Company. The parties have filed cross-motions for summary judgment. For the following reasons, I will deny plaintiff's motion for summary judgment, grant defendant's motion for summary judgment and enter judgment in favor of defendant on the entire complaint.

## **FACTUAL BACKGROUND**

Plaintiff Wugnet Publications is a Pennsylvania corporation that formerly conducted business at 104 Gayley Street, Media, Pennsylvania 19063. Def.'s Mot. Summ. J., ECF No. 10, Ex. A, ¶ 1. Plaintiff's co-tenant, and the principal occupant at that property, was the Democratic Committee of Delaware County ("DCDC"). During the relevant time period in this case, the property was covered by a commercial protector business owner's policy issued to DCDC by defendant Peerless Indemnity Insurance Company. Id., Ex. C.

In September 2007, plaintiff decided to cease doing day-to-day business at 104 Gayley Street. In a new lease executed by DCDC and its landlord, Field House Properties, DCDC agreed to lease the premises for $800 per month. Id., Ex. A, ¶ 3; Pl.'s Mot. Summ. J., ECF No. 11, Ex. 4. In an addendum to the lease agreement, signed only by DCDC and Field House Properties, DCDC was to reduce its rent by $100 per month in exchange for allowing plaintiff to continue receiving mail and other correspondence at the property. Pl.'s Mot. Summ. J., ECF No. 11, Ex. 1. In addition, DCDC would permit plaintiff to store its corporate documents and related assets in a secured four-drawer filing cabinet on the premises and would keep the cabinet and its contents safe and secure for plaintiff. Id.; Def.'s Mot. Summ. J., ECF No. 10, Ex. A, ¶ 4.

In June 2010, the chairman of DCDC was replaced by David Landau, Esquire, who directed that DCDC's headquarters at 104 Gayley Street be cleaned and reorganized. Def.'s Mot. Summ. J., ECF No. 10, Ex. A, ¶ 5. As part of this reorganization, agents and employees of DCDC, unaware of the importance of the contents of plaintiff's four-drawer filing cabinet, disposed of those items in the public trash. Id. Plaintiff discovered DCDC's mistaken disposal of the filing cabinet contents in January 2011 and immediately reported it to Mike Powers, treasurer of DCDC. Id. ¶ 6; Pl.'s Mot. Summ. J., ECF No. 11, Ex. 8. Plaintiff's accountant reconstructed the contents of the four-drawer filing cabinet and prepared a report valuing the intrinsic value of the cabinet's contents at $262,045. Pl.'s Mot. Summ. J., ECF No. 11, Ex. 9.

Because defendant had issued an insurance policy covering the property, plaintiff made several informal attempts to discuss settlement of the claim with Judith Kraut, defendant's claim specialist. Def.'s Mot. Summ. J., ECF No. 10, Ex. 11. Ms. Kraut told its insured, DCDC, that plaintiff had refused to submit the necessary documentation for a first-party claim. Id. In addition, she noted that the assigned adjuster, Chris Pare, had already found that the policy

provided no coverage for the loss under the third-party liability provisions. Id. Indeed, Mr. Pare had previously explained to DCDC, in an August 16, 2011 letter, that the policy did not cover plaintiff's loss as third-party liability due to a provision excluding from coverage any damage to a third-party's property in the "care, custody or control" of the insured. Def.'s Mot. Summ. J., ECF No. 10, Ex. D.

Thereafter, on January 31, 2012, plaintiff made a claim of $262,045 to defendant, as DCDC's insurer. Id., Ex. H. When defendant stated that the policy had a $100,000 limit on first-party coverage, id., Ex. I, plaintiff's counsel sent a letter on February 22, 2012 explaining that it brought its claim under the policy's third-party, or liability, coverage rather than first-party coverage. Pl.'s Mot. Summ. J., ECF No. 11, Ex. 12. Plaintiff's attorney went on to assert that he was preparing suit papers against DCDC and, when he obtained judgment in excess of the $100,000 coverage, he would ask DCDC to assign to plaintiff the right to sue defendant for insurance bad faith. Id. Defendant then promptly contacted DCDC and noted that plaintiff does "not wish to comply with the requirements set forth under your first party property coverage and intend[s] to pursue this as a third party liability claim. It is my understanding our liability department previously reviewed the third party liability matter . . . and issued a denial letter on that claim." Def.'s Mot. Summ. J., ECF No. 10, Ex. K.

In a July 8, 2013 letter to DCDC, Mr. Pare acknowledged receipt of a lawsuit filed by plaintiff against the DCDC in the Court of Common Pleas of Delaware County, Pennsylvania. Id., Ex. D. Mr. Pare again reiterated that DCDC's failure to safely and securely keep plaintiff's property was excluded from third-party liability coverage under the policy. Id. Mr. Pare declined to respond to the lawsuit, but requested any additional documentation that DCDC deemed germane to the claim. Id.

On December 28, 2015, DCDC assigned to plaintiff the right to bring legal action against defendant for both indemnity on plaintiff's claim and insurance bad faith based on defendant's failure to defend or indemnify DCDC under the terms of the policy of insurance.  Pl.'s Mot. Summ. J., ECF No. 11, Ex. 14.  Thereafter, on June 16, 2016, plaintiff filed the instant action against defendant in the Court of Common Pleas of Delaware County.  Def.'s Mot. Summ. J., ECF No. 10, Ex. A.  Defendant removed the case to this Court and filed an answer and affirmative defenses on August 12, 2016.  Id., Ex. B.

On May 15, 2017, both parties filed motions for summary judgment.  Dkt. Nos. 10, 11.  Responses were filed on May 30, 2017, Dkt Nos. 12, 13, defendant filed a reply brief on June 6, 2017, Dkt No. 14, and plaintiff filed a reply brief on June 13, 2017.  Dkt. No. 15.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.  To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c) (1).

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998), citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Rather, the court must consider the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Id. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence

to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

Notably, these summary judgment rules apply no differently where there are cross-motions pending. Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" Id., quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).

## DISCUSSION

### I. Breach of Contract Claim

Plaintiff's first cause of action alleges that defendant's denial of insurance coverage under the third-party provisions of the policy constitute a breach of contract. Both parties seek summary judgment on that claim. As I find that the insurance policy unequivocally excludes plaintiff's coverage request, I will grant defendant's motion for summary judgment on this claim and deny plaintiff's motion.

While an insurer owes a duty to defend an insured whenever the allegations in a complaint set forth a claim that potentially falls within the coverage of the policy, see Visiting Nurse Ass'n of Greater Phila. v. St. Paul Fire & Marine Ins. Co., 65 F.3d 1097, 1100 (3d Cir. 1995), an insurer owes a duty to indemnify an insured only if liability is established for conduct that actually falls within the scope of the policy coverage. See Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 831 n.1 (3d Cir. 1995). The insured bears the initial burden of establishing coverage under an insurance policy. See Erie Ins. Exch. v. Transamerica Ins. Co.,

533 A.2d 1363, 1366 (Pa. 1987). The insurer, on the other hand, has the burden of establishing the applicability of an exclusion. See Allstate Ins. Co. v. Brown, 834 F. Supp. 854, 857 (E.D. Pa. 1993).

In the face of plaintiff's claims that defendant is liable for its property loss under the third-party liability provisions of the policy, defendant contends that coverage is exempted under the following exclusion:

> **SECTION II – LIABILITY**
>
> **B.     Exclusions**
>
> **1.     Applicable to Business Liability Coverage**
> This insurance does not apply to:
> . . .
> **k.     Damage to Property**
> "Property damage" to:
> . . .
> (4) Personal property in the care, custody or control of the insured;
> . . .
> Paragraphs . . . and (4) of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. . . .
> . . .
> Paragraphs . . . (4) . . . of this exclusion do not apply to liability assumed under a sidetrack agreement.
>  . . .
> **F.     Liability and Medical Expenses Definitions**
> . . .
> 17.     "Property damage" means:
> a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b.     Loss of use of tangible property that is not physically injured. All such loss or use shall be deemed to occur at the time of the "occurrence" that caused it.

Def.'s Mot. Summ. J., ECF No. 10, Ex. D. The sole dispute remaining between the parties is whether plaintiff's filing cabinet was in the "care, custody or control" of DCDC, such that this exclusion applies.

Plaintiff attempts to avoid the applicability of this exclusion by claiming that DCDC did not maintain care, custody or control of the property. It reasons that, under the lease and addendum between Firm Alley Properties, LLC and DCDC, DCDC was the general tenant paying $800 per month, while plaintiff was a co-tenant, paying $100 per month. Plaintiff concludes that the $100 per month rental was in consideration for the right to store the four-drawer filing cabinet and contents on the premises, free of molestation. Because of plaintiff's status as a co-tenant, plaintiff contends that DCDC was not in care, custody or control of the property, therefore precluding application of the above exclusion in the policy.

Well-established principles of contract interpretation,[1] however, contradict plaintiff's characterization of its legal status under the lease agreement. "The paramount goal of contract interpretation is to determine the intent of the parties." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009) (citations and internal quotation marks omitted); see also Mellon, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980). "[C]ourts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent." Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980); see also Camp Ne'er Too Late, LP v. Swepi, L.P, 185 F. Supp. 3d 517, 544 (M.D. Pa. 2016) ("Interpretation is not concerned with the parties' 'post hoc judgment [s] . . . as to what should have been.'") (internal quotations omitted). "The strongest

---

[1] The parties do not discuss which state's law applies. As the parties are both Pennsylvania citizens and the contract was drafted and applied to a property in Pennsylvania, I find, for purposes of these motions, that Pennsylvania law governs.

8

objective manifestation of intent is the language of the contract." Baldwin v. Univ. of Pitt. Med. Ctr., 636 F.3d 69, 76 (3d Cir. 2011). Courts apply the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." Cnty. of Dauphin v. Fid. & Deposit Co. of Md., 770 F. Supp. 248, 251 (M.D. Pa.) (quotation omitted), aff'd, 937 F.2d 596 (3d Cir. 1991). Thus, where the words of the contract clearly manifest the parties' intent, a court need not "resort to extrinsic aids or evidence." Am. Eagle, 584 F.3d at 587 (citation and internal quotation marks omitted). As the Court of Appeals has stated:

> [A contract] will be found ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 93 (3d Cir. 2001) (quotations omitted). Contracts must be read to avoid ambiguities if possible. Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 247 (3d Cir. 2008) (citations omitted).

In this case, the lease agreement for the property at 104 Gayley Street is not ambiguous. The lease was strictly between Firm Alley Properties and DCDC; plaintiff was not a signatory to the document. Pl.'s Mot. Summ. J., ECF No. 11, Ex. 4. In an addendum to that lease agreement, plaintiff was to pay $100 of DCDC's $800 per month rent, in exchange for which DCDC would (a) allow mail to be delivered for plaintiff and its employees and (b) "allow WUGNUT to keep one four-drawer filing cabinet in the office." Id. The addendum further provided that

9

"WUGNET will NOT have keys or access to the office," undermining any suggestion that plaintiff was a co-tenant. Id. Accordingly, the plain language of the lease resolves the crucial issue in this matter.

The other evidence of record underscores this plain interpretation that the filing cabinet was in the care, custody and control of DCDC. In its verified complaint in this court, plaintiff specifically alleges that that "DCDC . . . agreed to allow Plaintiff to store its corporate documents and related assets in a secured 4-drawer filing cabinet on the premises, and to keep the cabinet and its contents safe and secure for Plaintiff." Def.'s Mot. Summ. J., ECF No. 10, Ex. A, ¶ 4. Likewise, in a July 27, 2011 letter to defendant's counsel, plaintiff's counsel represented the plaintiff's understanding that the filing cabinet was in the care, custody and control of DCDC, stating, "[m]y clients are—or will soon be—suing your insured, the Delaware County Democratic Committee, for negligence/breach of contract, in failing to safely and secure[ly] keep the business documents and archives of WUGNETS, in violation of the Committee's duties under the lease agreement between the Committee and WUGNETS." Id., Ex. J.

In the face of this overwhelming evidence, plaintiff concedes that because the parties tried to draft the lease themselves without the use of lawyers, the wording of the lease "could have been clearer." Pl.'s Reply Br., ECF No. 15, at 1. "Nevertheless," explains plaintiff, "a reasoned person, viewing the two documents and the behavior of the parties, can see that these documents created a lease between lessor, Alley, and lessees, DCDC and WUGNET, with DCDC paying $800/month rent and WUGNET paying $100/month." Id. Plaintiff goes on to assert the July 27, 2011 letter from its attorney was nothing more than a "slip of the pen" clearly contradicted by the terms of the lease. Plaintiff also contends that the parties conducted very

10

little discovery, leaving it unable to adduce proof in support of its position. It then cites some e-mail exchanges regarding plaintiff's repeated non-payment of its agreed-upon $100/month from which it draws the inference that plaintiff was a co-tenant on the lease. Id. at 2–3. Finally, plaintiff argues that "[t]he fact that WUGNET was not a signatory to the Addendum is just another example of an irrelevant 'loose end' that occurs when parties try to save money by doing legal work themselves." Id. at 3.

Plaintiff's efforts to substitute the parties' newly-articulated subjective intent in drafting the lease for the plain language of the contract violates the parol evidence rule. "[T]he Pennsylvania Supreme Court has long held that, under the parol evidence rule, courts may only consider such extrinsic evidence in certain, narrow circumstances." Batoff v. Charbonneau, 130 F. Supp. 3d 957, 966 (E.D. Pa. 2015). Specifically,

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004), quoting Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924). The court may not look to the substance of the negotiations or the understanding of one of the negotiators when the meaning of the terms of the agreement are this clear. Borough of Lansdale v. PP & L, Inc., 426 F. Supp. 2d 264, 305 (E.D. Pa. 2006).

Taking this well-established law together with the unambiguous language of the lease and addendum, plaintiff's argument—that it intended to create a lease between the landlord and itself

11

and that its failure to do so was a result of inexperience and errors—is unavailing. The parol evidence rule precludes any consideration of "the behavior of the parties," "slip[s] of the pen" or random emails drafted subsequent to the document. The lease and addendum clearly place DCDC in the "care, custody or control" of plaintiff's filing cabinet, meaning that the damage to that cabinet and its contents falls within an exclusion of the policy. In turn, I must grant summary judgment in favor of defendant on the breach of contract claim.

## II. Bad Faith Claim

Defendant also seeks summary judgment on plaintiff's bad faith claim. I agree that this claim is meritless and will grant judgment in favor of defendant on this claim as well.

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct, as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371. "In Pennsylvania, 'bad faith' in insurance cases is defined as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" Mirarchi v. Seneca Specialty Ins. Co., 564 F. App'x 652, 655 (3d Cir. 2014), quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994). "Resolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage, because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012).

Section 8371 is not restricted to an insurer's bad faith in denying a claim, but rather may extend to a variety of actions such as the insurer's investigative practices or failure to communicate with the insured. Hamm v. Allstate Prop. & Cas. Ins. Co., 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012). To succeed on a bad faith claim, a plaintiff must prove, by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004), quoting Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." Pilosi, 393 F.3d at 367, citing Kosierowski v. Allstate Ins. Co., 51 F.Supp.2d 583, 588 (E.D. Pa. 1999).

In their answers to interrogatories, plaintiff set forth the basis of the bad faith claim as follows:

> At first, Defendant's agent, Judith Kraut, tried to treat Plaintiffs as though they were making a first-party claim instead of a third-party liability claim, and told Plaintiffs they could claim only for the replacement cost of their lost documents and file cabinet contents. Since then, Defendant has treated Plaintiffs as though they were bringing an action for personal injuries, with all of the potential for fraud and malingering attendant upon such a claim for intangible and unprovable damages, instead of what this claim is, which is basically a claim for property loss.

Def.'s Mot. Summ. J., ECF No. 10, Ex. F, at Response to Interrog. 6. Plaintiffs supplemented their answer by arguing that:

> In response to Ms. Kraut's directions and advisory to the Plaintiffs, a list of documents with estimated costs to reproduce were submitted to Ms. Kraut. Plaintiffs proceeded to begin working on . . . financial records, reports and other documents that could be reproduced for a period of 6 weeks. Upon seeking advice from legal counsel, the Plaintiffs were advised to stop all reproduction of the documents. Plaintiff's lawyer, John Gallagher, informed Ms. Kraut, that the Plaintiffs did not have to produce lost contents. Plaintiffs also seek general and punitive damages for insurance bad faith, based upon the Assignment from the Delaware County Democratic Committee ("DCDC").

Id. at Supp. Resp. to Interrog. 6.

To the extent plaintiff alleges that defendant's denial of coverage was in bad faith, this claim is meritless. As discussed in detail above, defendant correctly determined that plaintiff's claim fell within a policy exclusion. That conclusion compels the finding that defendant's denial of coverage does not constitute bad faith. Gold, 880 F. Supp. 2d at 597.

To the extent that plaintiff alleges that defendant willfully misinterpreted plaintiff's claim to be requesting first-party property coverage rather than third-party liability coverage, the undisputed evidence of record does not support a reasonable inference that defendant acted in bad faith. In an August 16, 2011 letter to DCDC, defendant initially reviewed the claim for third-party liability and stated that it would not defend DCDC in a suit by plaintiff because "[t]he reason for which the claimant has filed this claim is because personal property in your care, custody and control was improperly disposed of and the claimant can no longer use it. Personal property in your care, custody and control is specifically excluded under your policy." Def.'s Mot. Summ. J., ECF No. 10, Ex. D. Thereafter, in an August 18, 2011 letter, defendant stated its understanding that DCDC was making a first-party property claim under the policy and

14

requested documentation from plaintiff to support the costs of property replacement. Id., Ex. G. By a January 31, 2012 letter to defendant, plaintiff's counsel provided their accountant's report "setting the cost of replacing the documents and other things in the filing cabinet at $262,045. Id., Ex. H. When defendant responded that the limit of available coverage under the first-party property coverage provision of the policy was $100,000, id., Ex. I, plaintiff's counsel informed defendant that plaintiff intended to pursue the matter as a third-party liability claim. Pl.'s Mot. Summ. J., ECF No. 11, Ex. 12. Defendant then contacted DCDC and noted that plaintiff does "not wish to comply with the requirements set forth under your first party property coverage and intend[s] to pursue this as a third party liability claim. It is my understanding our liability department previously reviewed the third party liability matter . . . and issued a denial letter on that claim." Def.'s Mot. Summ. J., ECF No. 10, Ex. K. Finally, upon receipt of plaintiff's lawsuit against DCDC on May 23, 2013, defendant reiterated that third-party liability coverage for the claim fell within a policy exclusion. Def.'s Resp. Opp'n, ECF No. 10, Ex. D.

Plaintiff's unsupported characterization of defendant's initial confusion over the nature of its claim as "bull-headed," Pl.'s Resp. Opp'n, ECF No. 13, at 3, or a result of defendant's "incorrigibility in attempting to limit its damages exposure by mischaracterizing this claim as a first-party claim instead of a third-party claim," Pl.'s Mot. Summ. J., ECF No. 11, ¶ 17, fails to further its position. Plaintiff produced no evidence that defendant lacked reasonable basis for its initial understanding or persisted in this position despite clarification to the contrary. To the contrary, the evidence of record clearly establishes that defendant's initial confusion was nothing more than mere error. Indeed, defendant's mistaken characterization of the claim as seeking first-party coverage actually subjected it to more liability exposure—up to $100,000—than it

15

would have under the third-party liability provisions. Given the complete absence of bad faith evidence, I find that this claim fails on summary judgment review.

## CONCLUSION

In light of the foregoing, I find that no genuine issue of material fact remains as to either the breach of contract claim or the bad faith claim. Accordingly, I will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment.

An appropriate order follows.